RECORD NO. 16-1472                    **REDACTED**

**IN THE**

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

BEATRICE LOVETT,

*Plaintiff - Appellant,*

v.

CRACKER BARREL OLD COUNTRY STORE, INC.,

*Defendant - Appellee.*

and

C. BOCS, INC.; JOHNNI MOORE; CHRIS KOPKA; LISA RICE; GORDON FINCHAM; PRISCILLA MEADOW; KATHY LITTLE

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT ELIZABETH CITY

**RESPONSE BRIEF OF APPELLEE
CRACKER BARREL OLD COUNTRY STORE, INC.**

Christopher A. Page
YOUNG MOORE & HENDERSON, PA
P. O. Box 31627
Raleigh, North Carolina 27622
(919) 782-6860
cap@youngmoorelaw.com

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-1472__    Caption: __Lovett v. Cracker Barrel Old Country Store, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Cracker Barrel Old County Store, Inc.__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.    Does party/amicus have any parent corporations?  ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑YES ☐NO
       If yes, identify all such owners:
       Biglari Holdings, Inc.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Christopher A. Page          Date: May 11, 2016

Counsel for: Cracker Barrel Old County Store, Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on ___May 11, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ralph T. Bryant, Jr., Esq.
PO Box 723
Newport, NC 28570

/s/ Christopher A. Page                    May 11, 2016
        (signature)                              (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................... iii

CRACKER BARREL'S STATEMENT OF THE ISSUES ....................................1

STATEMENT OF THE CASE ...............................................................2

    Procedural History ........................................................4

    Background Facts ..........................................................5

    False Complaints by Ms. Lovett against Coworkers.....................9

    Allegations Regarding "Failure to Train" Ms. Lovett as Retail Shift Leader .......................................................................13

    Restricted Weekend Availability and Removal from the Schedule .............15

SUMMARY OF THE ARGUMENT .......................................................19

ARGUMENT .................................................................................21

    I.     STANDARD OF REVIEW .................................................21

    II.    THE DISTRICT COURT PROPERLY GRANTED CRACKER BARRELL'S MOTION FOR SUMMARY JUDGMENT ON MS. LOVETT'S RETALIATION CLAIM ....................................21

        A.    Self-Serving Affidavits of Non-Movants, Unsupported by Objective Record Evidence, Do Not Create Genuine Issues of Material Fact Sufficient to Defeat Summary Judgment ...............................................................21

B.    Because Ms. Lovett Failed to Proffer Any Evidence Which Would Show that Retaliation was the But-For Cause of Her Reduction in Hours and Being Removed from the Schedule, Her Retaliation Claim Fails as a Matter of Law ......................................................................... 25

III.    MS. LOVETT WAIVED ANY CHALLENGE TO THE DISTRICT COURT'S RULING ON HER DISCRIMINATION CLAIMS .......................................................................... 36

CONCLUSION ....................................................................... 37

CERTIFICATE OF COMPLIANCE ....................................... 38

CERTIFICATE OF SERVICE .............................................. 39

# TABLE OF AUTHORITIES

## CASES

Page

*11126 Baltimore Blvd., Inc. v. Prince George's Cnty.,*
58 F.3d 988 (4th Cir. 1995) ................................................................. 36

*Altemus v. Federal Realty Inv. Trust,*
490 Fed. Appx. 532, 536 (4th Cir. 2012) ........................................... 23

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................... 22, 24

*Askew v. HRFC, LLC,*
810 F.3d 263 (4th Cir. 2016) .............................................................. 21

*Bacon v. Hennepin Cnty. Med. Ctr.,*
550 F.3d 711 (8th Cir. 2008) .............................................................. 23

*Boyer-Liberto v. Fontainebleau Corp.,*
786 F.3d 264 (4th Cir. 2015) .............................................................. 25

*Butts v. Aurora Health Care, Inc.,*
387 F.3d 921 (7th Cir. 2004) .............................................................. 23

*Carter v. Ball,*
33 F.3d 450 (4th Cir. 1994) ................................................................ 26

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...................................................................... 22, 24

*DeJarnette v. Corning Inc.,*
133 F.3d 293 (4th Cir. 1998) ......................................................... 33, 34

*Evans v. Techs. Apps. & Serv. Co.,*
80 F.3d 954 (4th Cir. 1996) ................................................................ 33

*F.T.C. v. Publishing Clearing House, Inc.,*
104 F.3d 1168 (9th Cir. 1997) ............................................................ 23

iii

*Foster v. Univ. of Maryland-Eastern Shore*,
    787 F.3d 243 (4th Cir. 2015) ....................................................26, 27, 28, 32, 34

*Jiminez v. Mary Wash. Coll.*,
    57 F.3d 369 (4th Cir. 1995) ............................................................34

*King v. Rumself*,
    328 F.3d 145 (4th Cir. 2003) ...........................................................33

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
    560 F.3d 156 (3d Cir. 2009) ............................................................23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................22

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ....................................................................25

*National Enterprises, Inc. v. Barnes*,
    201 F.3d 331 (4th Cir. 2000) ..........................................................23, 24, 32

*Roe v. Doe*,
    28 F.3d 404 (4th Cir. 1994) ............................................................21

*Sylvia Dev. Corp. v. Calvert Cnty.*,
    48 F.3d 810 (4th Cir. 1995) ............................................................21

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) ....................................................................26

*Tucker v. Waddell*,
    83 F.3d 688 (4th Cir. 1996) ............................................................36

*Univ. of Texas Southwestern Med. Cntr. v. Nassar*,
    __ U.S. __, 133 S. Ct. 2517 (2013) ..................................................27

## STATUTES

42 U.S.C. § 1981 .............................................................................25

42 U.S.C. § 2000e-2(a)(1)................................................................25

42 U.S.C. § 2000e-2(m)..................................................................27

## RULES

Fed. R. App. P. 28(a)(8)................................................................36

Fed. R. Civ. P. 1............................................................................22

Fed. R. Civ. P. 56(a)......................................................................21

## CRACKER BARREL'S STATEMENT OF THE ISSUES

I.  WHETHER THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT FOR TRIAL AND THEREFORE CRACKER BARREL WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S RETALIATION CLAIM.

II.  WHETHER PLAINTIFF FAILED TO DEMONSTRATE THAT RETALIATION WAS A BUT-FOR CAUSE OF CRACKER BARREL'S REDUCTION IN AND ELIMINATION OF HER HOURS, WHERE PLAINTIFF REDUCED HER OWN WORKING AVAILABILITY AND FAILED TO OFFER ANY COMPETENT EVIDENCE THAT CRACKER BARREL'S STATED REASON FOR REMOVING HER FROM THE SCHEDULE WAS FALSE.

## **STATEMENT OF THE CASE**

Defendant-Appellee Cracker Barrel Old Country Store, Inc. (hereinafter "Cracker Barrel") hereby submits its Statement of the Case to clarify the scope of this appeal. Although Ms. Lovett is prosecuting this appeal on her retaliation claim only (Appellant Br. p. 3), and therefore does not challenge on appeal the District Court's dismissal of her race-based discrimination claims, she nevertheless includes in her Statement of the Case a litany of unsourced and unsupported allegations relating to those dismissed discrimination claims, including Cracker Barrel's "failure to train" her as a Retail Shift Leader. Cracker Barrel will therefore discuss the entire factual and procedural context so that this Court can fully understand the issues before it.

### **Overview**

This is an employment related dispute in which Ms. Lovett, an African American woman, asserted claims for racial discrimination and retaliation in violation of Title VII and Section 1981 against Cracker Barrel, her former employer. Specifically, Ms. Lovett alleged that Cracker Barrel discriminated against her by failing to advance her to the position of Retail Shift Leader, treated her less favorably than white employees with regard to discipline and training, and retaliated against her by decreasing her hours after she filed a Charge of

2

Discrimination with the Equal Employment Opportunities Commission ("EEOC"). (JA 54-63.)

Viewing the evidence in the light most favorable to Ms. Lovett, the District Court granted Cracker Barrel's motion for summary judgment because there was no genuine issue of material fact, and the undisputed evidence showed that Ms. Lovett was not discriminated or retaliated against in any way. Ms. Lovett did not, and could not, show that any white employee received preferential treatment to her in any context. Similarly, Ms. Lovett did not, and could not, show that Cracker Barrel's actions toward her with regard to promotions, rate of pay, discipline, training, and scheduling were illegitimate, discriminatory, retaliatory, or pretextual.

Indeed, the record presented to the District Court reflected the following unrefuted facts: (1) ███████████████████████████

███████████████████████████████████

███████████████████████████████████

(2) the promotion to Shift Leader that she did not receive was given to an African American woman with significantly more experience than Ms. Lovett (JA 279-80, 406-07); (3) Ms. Lovett was not qualified for the Shift Leader position because she did not pass the computer test showing sufficient knowledge with job proficiency (as the other African American candidate had) (JA 406-07); (4) the District Manager that Ms. Lovett claims did not promote her to Shift Leader because of her

3

race is the *same* District Manager that personally recruited, in-person interviewed and hired Ms. Lovett as a Shift Leader in Training at the highest rate of pay (JA 404-05); (5) Ms. Lovett was not promoted to the Shift Leader position because she had made numerous false accusations against coworkers and managers, and the District Manager concluded that Ms. Lovett did not have the requisite leadership qualities for that role (JA 407); (6) ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████ and (8) Ms. Lovett's hours were reduced only after she personally restricted her availability on forms that she filled, signed, and submitted to her manager (JA 147, 170, 179, 282, 408.)

### **Procedural History**

Ms. Lovett amended her Complaint twice.  (JA 11, 29, 54.)  The Second Amended Complaint appeared to allege two claims of race-based discrimination (failure to train/promote and disparate discipline) and one claim of retaliation (retaliatory reduction in hours).  (JA 58-60.)

The District Court granted summary judgment for Cracker Barrel on all three claims.  (JA 458-67.)  First, the Court held that Ms. Lovett waived her disparate treatment in discipline claim for failure to respond to Cracker Barrel's

4

summary judgment argument.  (JA 460, n. 2.)  Second, the Court granted summary judgment for Cracker Barrel on Ms. Lovett's discrimination claim premised on an alleged failure to train/promote because she did not present sufficient evidence of white comparators to establish a *prima facie* case of discrimination, and she could not rebut Cracker Barrel's proffered nondiscriminatory reason for its actions.  (JA 462-64.)  Third, the Court granted Cracker Barrel summary judgment on Ms. Lovett's retaliation claim because she failed to present sufficient evidence to create a genuine issue of fact that Cracker Barrel's non-retaliatory justification for removing Ms. Lovett from the work schedule—her own limited availability—was merely a pretext.  (JA 464-67.)

Ms. Lovett only assigns error to the District Court's dismissal of her retaliation claim.  (Appellant Brief p. 2-3.)   The discrimination claims based on disparate discipline and an alleged failure to train/promote are not at issue in this appeal.

### **Background Facts**

Cracker Barrel is a national chain with 38 locations in North Carolina.  (JA 403.)   Cracker Barrel stores have both a restaurant side of operations and a retail side.  (JA 402.)  The retail side is the area of the store where packaged foods, clothing and other merchandise are sold.  Store employees are hired to work in either the restaurant side or the retail side.  (Id.)   Restaurant employees are

generally supervised by a Restaurant Manager. (JA 403.) Retail employees are generally supervised by a separate Retail Manager. (Id.) The Restaurant Manager reports to a Restaurant District Manager, and the Retail Manager reports to a Retail District Manager. (Id.) The Retail District Manager for Store 81 in Roanoke Rapids, North Carolina during the time relevant to Ms. Lovett's Second Amended Complaint was Lisa Rice. (Id.)

In August 2012, Cracker Barrel advertised an open Retail Shift Leader position at Store 81. Ms. Lovett submitted an application, and Ms. Rice conducted an in-person interview with Ms. Lovett. (JA 82, 404.)

The Retail Shift Leader Program allows qualified and approved retail employees to serve in temporary leadership roles when their Retail Manager is absent. (JA 290, 403-04.) It is intended as a support to Retail Managers to keep shift operations running smoothly. (JA 290, 404.) The Retail Shift Leader is neither a full-time nor managerial position. (JA 404.) Stores utilize Shift Leaders only when the Retail Manager is away from the store. (Id.) Shift Leaders are paid a premium wage that is $2.00 more per hour than their highest achieved hourly rate, but that rate is paid only when the employee is performing Shift Leader duties when the Retail Manager is away from the store, no more than 2-4 weeks per year. (JA 279, 404.)

6

During Ms. Lovett's interview, Ms. Rice explained that the hired candidate would officially be a "Shift Leader in Training," and that in order to become "Shift Leader," the candidate would need to progress through Cracker Barrel's Personal Achievement Responsibility, or PAR, training program.  (JA 84-85, 404.)

Under the PAR training program, all retail employees at Cracker Barrel begin as "Rising Stars," then they may progress from the beginning level, PAR I, to the highest level, PAR IV, through training and computer testing of job proficiency skills.  (JA 279, 404.)  Each PAR level advancement comes with a two percent hourly rate increase.  (Id.)  Retail employees must be at least a PAR II before they may begin training for the Retail Shift Leader position.  (JA 404.) Even after completing that training, only employees who achieve PAR III may be certified as a Retail Shift Leader by the District Manager.  (JA 290, 404.)

Ms. Rice explained the details of the Shift Leader training and certification policies to Ms. Lovett during their interview.  (JA 405.)  Ms. Lovett testified that she understood she was hired as a Shift Leader in Training.  (JA 85.)

Ms. Lovett was provided with the Cracker Barrel Employee Handbook containing Cracker Barrel's equal employment policies.  (JA 86.)  Ms. Lovett testified that when she was hired, she read and understood the following:

> Cracker Barrel will not tolerate any form of discrimination, harassment or retaliation affecting its employees or applicants due to

7

race, color, religion, sex, sexual orientation, national origin, age, marital status, medical condition, or disability.

Employees who believe they have been subjected to unlawful discrimination, harassment, or retaliation must immediately advise their Supervisor, Manager, or District Manager. In addition, you can always call the Employee Relations Department toll-free . . . to report issues or concerns about your employment at Cracker Barrel. You are also strongly encouraged to report inappropriate conduct that you observe, whether or not it affects you directly.

The company's anti-discrimination and anti-harassment policies are intended to result in effective responses to problems.  They require you to provide the company an immediate opportunity to investigate and resolve your workplace concerns. Therefore, you must notify your Supervisor, Manager, District Manager, or the Employee Relations Department at the above number regarding issues of harassment, discrimination or retaliation. Employees are encouraged to use the chain of command, but you are not required to notify or speak to store management prior to contacting the Employee Relations Department.

(JA 87-88, 343.)

Ms. Lovett's personality and prior supervisory experience impressed Ms. Rice.  (JA 404-05.) ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

### False Complaints by Ms. Lovett against Coworkers

Ms. Lovett began making spurious complaints about her coworkers almost as soon as she was hired at Cracker Barrel.  In October 2012, Ms. Rice met with Ms. Lovett and expressed concern that after only two months at Cracker Barrel, Ms. Lovett had already made a variety of groundless accusations about her coworkers, none of which pertained to Ms. Lovett's race.  (JA 115-16; 405.)  By November 2012, Ms. Lovett was calling Ms. Rice's cell phone repeatedly to complain about her coworkers.  (JA 123.)  In a single day, Ms. Lovett called Ms. Rice's cell phone three times and left three voicemails.  (Id.)  Ms. Lovett complained about six different coworkers and managers within a few months of being hired, more than any employee within Ms. Rice's district.  (Id.)  Ms. Rice told Ms. Lovett that she would need to demonstrate the ability to build effective working relations with her peers and managers before she would be given any leadership responsibilities.  (JA 123, 405.)

As just one example of these types of complaints, in January 2013, Ms. Lovett accused seasonal employee Kathy Little and interim Retail Manager Anne Bond of stealing surplus Christmas garland from Cracker Barrel.  (JA 406.)  Ms. Rice spoke with Ms. Bond to investigate the accusation, and interviewed Ms.

9

Lovett, who was able to produce no evidence substantiating her claim. Based on her investigation, Ms. Rice concluded that Ms. Lovett's complaint was meritless. (Id.) Ms. Lovett also approached Store 81 General Manager Chris Kopka with the same accusation. (JA 270.) Mr. Kopka knew that Ms. Little bought the Christmas garland in a special cash transaction that a manager authorized for surplus sales to employees. (Id.) He, too, determined that Ms. Lovett's accusation was false. (Id.)

Ms. Lovett filed her first Guest Relations Ticket (a formal complaint) through the "Open Door" hotline[1] on January 28, 2013, claiming that Ms. Little "made many statements of discrimination" and "requested not to work with [Ms. Lovett] because she is a person of color." (JA 119-128.) This matter was assigned to Angela Brown, an African American Employee Relations Department specialist who focuses on allegations of discrimination under Title VII. (JA 234-36.) As she does with every complaint, Ms. Brown tracked the progress of her investigation with the Guest Relations Ticket interface on her computer, in accordance with Cracker Barrel procedure. (JA 235-36.)

Those documents show that Ms. Brown spoke with Ms. Lovett via telephone on January 28, 2013, the same day Ms. Lovett filed her complaint. (JA 245.) Ms.

---

[1] Cracker Barrel operates an internal Employee Relations Department dedicated to enforcing Cracker Barrel's equal employment policies. In that function, the Employee Relations Department utilizes an "Open Door" hotline to address employees' concerns and tracks the progress of each investigation through a specialized computer program. (JA 235.)

Lovett told Ms. Brown that Ms. Little refused to share the stock room key with her because Ms. Little did not want to touch the same key that Ms. Lovett touched. (Id.)  Ms. Lovett said that she raised these concerns with Ms. Bond before Christmas, but nothing had changed.  (Id.)  Ms. Lovett also said that Ms. Little refused to give a product to a guest.  (Id.)  Finally, she said that Ms. Kelly had pointed to a photograph of all the Retail Managers in the district and said "That's what a Shift Leader looks like," apparently because the photo contained a group of white women.  (Id.)

The following week, Ms. Brown called Ms. Bond, Ms. Little, and Mr. Kopka to investigate Ms. Lovett's allegations.  (JA 236, 244.)  Ms. Bond told Ms. Brown that Ms. Lovett never raised any allegations of racial discrimination with her.  (JA 244.)  Ms. Bond offered to let Ms. Lovett work at the Cracker Barrel in Wilson, but Ms. Lovett declined because Cracker Barrel would not reimburse her for travel expenses.  (Id.)   Regarding the photograph, Ms. Bond said that there was an African American man in the picture, so she felt that whatever comment was made could not have been based on race.  (Id.)  Finally, Mr. Kopka told Ms. Brown that he thought Ms. Little and Ms. Lovett did not get along, but he had heard no allegation of racial motivation before the filing of the Guest Relations Ticket.  (Id.)

Cracker Barrel's response to Ms. Lovett's first Guest Relations Ticket exemplifies the way that it handled each of her four formal complaints through the

Open Door hotline—with prompt, thorough, and documented investigations. Based on her investigation, Ms. Brown determined that Ms. Lovett's allegations were meritless. (JA 122, 242.)

Not only does Ms. Lovett does not refute the falsity of these myriad complaints in either her response to Cracker Barrel's motion for summary judgment or on appeal, but *Ms. Lovett conceded in her deposition testimony that these allegations were completely lacking in proof, just as Ms. Brown determined.* For example, Ms. Lovett recanted her prior allegation that Ms. Little said she did not want to share the stock room key with Ms. Lovett because of her race. (JA 102-03.) Ms. Lovett further conceded that it would make "no sense" for her to interpret Ms. Kelly's alleged comment with regard to the photograph—"That's what a Shift Leader looks like"—to mean that only white people could be Shift Leader. (JA 104.) Ms. Lovett testified that she never raised allegations of racial discrimination with Ms. Bond in 2012 at all, contradicting her statements to Ms. Brown and even the Charge of Discrimination with the EEOC. (JA 105-07, 436.) Ms. Lovett denied having even alleged that Ms. Little did not want to work with her because of her race, despite including that allegation in her Second Amended Complaint. (JA 56, 108.)

## Allegations Regarding "Failure to Train" Ms. Lovett as Retail Shift Leader

Ms. Lovett's pattern of making unsubstantiated complaints motivated Ms. Rice to reconsider whether Ms. Lovett was qualified to be a Shift Leader. (JA 123, 407.)  Ms. Rice based decisions about the Shift Leader position on merit, not race. (JA 407.)  Ms. Rice has hired white employees from outside Cracker Barrel as Shift Leaders in Training, as she did with Ms. Lovett, only to stop training or demote those employees if they were not a good fit in the leadership position.  She has done so on at least six occasions.  (JA 407-08.)

Ms. Rice hired Johnni Moore as Retail Manager at Store 81 in February 2013.  (JA 406.)    Ms. Moore began to assess the retail employees to determine if any were suitable for the role of Shift Leader.  (JA 279-80, 406.)  Ms. Moore and Ms. Rice agreed to select Ms. Rahman, an African American employee who had worked at Cracker Barrel for nearly eight years and achieved PAR IV classification, the highest level of training.  (Id.)  At that time, Ms. Lovett was only a PAR II, and was therefore ineligible to be certified as Shift Leader.  (JA 406-07.)  Ms. Rice certified Ms. Rahman as the Retail Shift Leader in June 2013.  (JA 406.)[2]

---

[2] Despite Ms. Lovett's allegations to the contrary (Appellant Br. pp. 4-5), Cracker Barrel never promoted Ms. Little to Shift Leader, and never trained her for the position.  There is no dispute that Ms. Little was only a seasonal employee hired to work during the holiday season of 2012. (Appellant Br. p. 4.)  The Plaintiff also

13

Ms. Lovett entered her second formal complaint through the Open Door hotline on September 5, 2013. The substance of her complaint was that she had called the hotline before and "nothing [was] being done." (JA 131.) (Ms. Lovett, even when confronted with the documentation of Ms. Brown's thorough investigation of her complaints in the course of this lawsuit, continues to claim that "nothing was done." (Appellant Br. p. 5.)) Employee Relations Specialist Whitney Fowler attempted to call Ms. Lovett three times, but the line was always busy, so she left a voicemail. (JA 133.) Ms. Fowler transferred the matter to Karen Johnston, a Field Human Resources Officer. (JA 412.) Ms. Johnston spoke with Ms. Lovett via telephone at length on September 6, 2013. (JA 413.) During that call, Ms. Lovett made a number of complaints about Ms. Moore. Specifically, Ms. Lovett alleged that Ms. Moore gave Ms. Lovett poor evaluations and would not coach her on ways to improve. (JA 136.) Ms. Lovett also demanded to know why Ms. Moore was not training her as Shift Leader. (Id.)

---

does not dispute the deposition testimony of Ms. Rice that the process of becoming a Shift Leader usually takes many months and requires the employee to achieve PAR III qualification. (JA 456-57.) Ms. Rice testified that she suspended Shift Leader training in late 2012 and early 2013 until she could hire a permanent Retail Manager. (JA 406.) The Plaintiff does not dispute that Ms. Little was not certified as a Shift Leader.

14

In the course of her investigation, Ms. Johnston spoke with Ms. Rice and Ms. Moore.  (JA 413.)  They explained yet again that Ms. Lovett was not being trained as Shift Leader because she lacked the interpersonal skills required by the position, and that Ms. Rahman was a more suitable candidate due to her experience and training.  (Id.)  Ms. Johnston reviewed Ms. Lovett's most recent evaluation, in which Ms. Moore commented: "Beatrice you do a good job connecting to the external guest and following the steps of service.  Use those skills to connect with your internal guest and help them to develop their sales skills. . . .  Thanks for your hard work and dedication to our guests."  (JA 413, 417.)   Based her interviews and the clearly complimentary evaluation Ms. Moore gave Ms. Lovett, Ms. Johnston determined that Ms. Lovett's complaints had no factual basis.   (JA 413.)  Nevertheless, Ms. Fowler wrote Ms. Lovett a letter on September 9, 2013, thanking her for using the Open Door hotline and encouraging her to contact Employee Relations in the future if there were any further issues. (JA 142-43.)

Ms. Lovett filed a Charge of Discrimination with the EEOC on September 12, 2013. (JA 144-45.)

**Restricted Weekend Availability and Removal from the Schedule**

On September 30, 2013, Ms. Lovett also provided Ms. Moore an updated availability form, in which she removed all Saturday shifts from her available working hours.  (JA 147, 281.) ███████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████

Around March 2014, Ms. Lovett informed Ms. Moore that she would only be available to work one Sunday in April, in addition to being unable to work any Saturday shifts, per her September 2013 availability form.  (JA 265.)  In a voicemail left with Ms. Rice at 10:20 p.m. on March 21, 2014, Ms. Lovett said that she was going to shorten her availability further "because it's not really right for me to be available when my other job I can, you know, make money there."  (JA 264.)

On March 23, 2013, Ms. Lovett submitted a new worksheet in which she **completely removed all weekend shifts from her availability**.  (JA 179, 282.)  Ms. Moore explained to Ms. Lovett that she was required to schedule retail employees based on the business needs of the company.  (JA 280-81.)  That requirement comes from Cracker Barrel's Employee Handbook, which Ms. Lovett received prior to being hired, stating: "Scheduling is based on business need.  Therefore, Cracker Barrel can not guarantee a certain number of hours for any employee."  (JA 377.)  Cracker Barrel conducts a significant portion of its retail business on weekends, because those are its busiest days.  (JA 280-81.)  Ms.

Moore made clear that if Ms. Lovett could not work on either Saturdays or Sundays, Ms. Moore would be forced to hire an additional employee, which would likely affect Ms. Lovett's weekday hours.  (JA 262, 282.)

Ms. Moore, Ms. Rice, Ms. Brown, and Ms. Johnston discussed Ms. Lovett's schedule at length in a series of conversations documented by the Employee Relations Department.  (JA 157-77.)  In an email to Ms. Rice, Ms. Brown, and Ms. Johnston dated March 31, 2014, Ms. Moore explained her position with regard to scheduling Ms. Lovett:

> Beatrice turned in a new availability sheet to Chris last week. She has listed her availability as Monday thru Thursday 6pm until 10pm. Friday she is available from 6pm until 11pm. As her last availability listed she still is not available on Saturday and now she has added that she is not available on Sunday. Prior to submitting this new availability she had requested three of the four Sundays off in the month of April. At that time I had a conversation with her and asked if she could work any of the Saturdays on the weekends she was requesting Sundays off. She said she would have to check her calendar but she didn't think so.  I explained if she was not available for Sundays and this was going to be an ongoing that [sic] I would have to hire another retail employee and it could effect [sic] the hours she got during the week. I do not have Beatrice scheduled for any hours next week due to her availability not meeting the needs of the business.

(JA 171.)  In none of these internal communications did Ms. Moore or anyone else express or imply a desire to retaliate against the Ms. Lovett for filing a Charge of Discrimination with the EEOC seven months prior.

17

Ms. Brown wrote Ms. Lovett a letter explaining that she was aware Ms. Lovett changed her availability to meet the needs of her other job. (JA 162, 172.) Ms. Brown's letter stated: "Please understand that it is imperative to the successful operation of the store for you to be able to work the hours necessitated by Cracker Barrel's business needs." (JA 180-81.)

Even in the face of Cracker Barrel's explanation about the relationship between weekend availability and scheduled hours, Ms. Lovett refused to change her schedule.

Ultimately, Ms. Moore did have to hire a new employee to work the weekend shifts that Ms. Lovett refused. (JA 160, 282.) On April 22, 2014, Ms. Moore met with Ms. Lovett to explain precisely why Ms. Lovett was not on the schedule. (JA 160, 282.) At Ms. Brown's request, Ms. Moore arranged for a third party witness to sit in on the meeting. (JA 160.) Ms. Moore explained that she scheduled weekday shifts for employees who were also willing to work on the weekend in order to ensure that the most productive employees were satisfied with their hours. (JA 280-81.) Ms. Moore felt that accommodating Ms. Lovett with weekday shifts without weekend availability would be unfair to the other retail employees who were willing to work the busiest shifts. (JA 160, 282.) Thus, unless Ms. Lovett opened her availability to include at least one dedicated shift on Saturdays or Sundays, she would not be put back on the schedule. (JA 160.)

18

However, as Ms. Brown reminded Ms. Moore on April 9, 2016, Ms. Lovett *was* to be put back on the schedule *if* she opened up her weekend availability. (Id.) In short, whether she would remain on the schedule or not was in Ms. Lovett's control.

Ultimately, Ms. Lovett refused to add a consistent weekend shift to her availability, so she remained off of the schedule. (JA 282.)

On June 9, 2014, Ms. Lovett filed her complaint *pro se*. (JA 11-15.) She filed her Second Amended Complaint on September 30, 2015. (JA 54-63.)

## SUMMARY OF THE ARGUMENT

Ms. Lovett argues that Cracker Barrel removed her from the schedule in retaliation for filing a complaint with the EEOC. The District Court's ruling should be affirmed because there is no genuine factual dispute that Cracker Barrel modified Ms. Lovett's schedule based on her restricted availability. After she filed her EEOC complaint, Ms. Lovett submitted an availability form removing Saturdays completely from her schedule, and her work hours were reduced accordingly (in fact, by the number of hours she missed on Saturdays). Ultimately, when Ms. Lovett amended her availability form again in March 2014 to remove *any* weekend availability (a fact Ms. Lovett does not deny), her Retail Manager removed her from the schedule because Ms. Lovett's availability did not meet Cracker Barrel's business needs.

19

The District Court properly found that Ms. Lovett failed to rebut Cracker Barrel's legitimate and non-retaliatory reason for reducing her hours and eventually removing her from the schedule. In doing so, the District Court held that Ms. Lovett's "self-serving opinion[] without objective corroboration is insufficient to create a triable issue of fact." (JA 463.) The District Court's application of this principle was proper in light of the familiar summary judgment standard, and it complies with well-established Fourth Circuit precedent.

Even when viewed in the light most favorable to Ms. Lovett, the evidence before the District Court was insufficient to show that *but-for* retaliatory animus, Cracker Barrel would not have removed Ms. Lovett from the schedule. Ms. Lovett has not challenged Cracker Barrel's practice of emphasizing weekend availability in its scheduling policies, she has not denied that she refused to work on the weekends, and she has presented no evidence that employees who were unavailable to work on weekends, like Ms. Lovett, were treated any differently. Therefore, because Ms. Lovett has presented no competent evidence tending to show that Cracker Barrel's proffered reason for removing Ms. Lovett from the schedule was false, she cannot carry her burden of demonstrating but-for causation.

Ms. Lovett did not appeal the District Court's dismissal of her race-based discrimination claims premised on disparate discipline and failure to train/promote. Ms. Lovett consequently waived the right to challenge those rulings.

20

# ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. *Roe v. Doe*, 28 F.3d 404, 406 (4th Cir. 1994).   In conducting *de novo* review, this Court "[applies] the same standard that the district court was required by law to apply for granting the motion for summary judgment." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir. 1995).

## II.    THE DISTRICT COURT PROPERLY GRANTED CRACKER BARREL'S MOTION FOR SUMMARY JUDGMENT ON MS. LOVETT'S RETALIATION CLAIM.

### A.    Self-Serving Affidavits of Non-Movants, Unsupported by Objective Record Evidence, Do Not Create Genuine Issues of Material Fact Sufficient to Defeat Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides the familiar summary judgment standard: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   In considering a Rule 56 motion, the trial court is required to view the evidence in the light most favorable to the non-moving party. *See Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

21

However, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Substantive law informs which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. With regard to the "genuineness" of a factual dispute, courts look to whether "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

These two requirements – materiality and genuineness – were built into Rule 56 to promote the "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is not a "disfavored procedural shortcut"; it is an important tool by which "factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.*

For these reasons, courts have consistently held that self-serving affidavits of non-movants, unsupported by objective record evidence, do not create "genuine"

22

factual disputes sufficient to defeat summary judgment. *See, e.g.*, *National Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (holding that a "self-serving affidavit" describing the contents of certain agreements was insufficient to defeat a motion for summary judgment where the non-movant did not produce supporting evidence); *Altemus v. Federal Realty Inv. Trust*, 490 Fed. Appx. 532, 536 (4th Cir. 2012) (characterizing a "self-serving affidavit . . . unsupported by the record" as a mere "scintilla of evidence" insufficient to defeat summary judgment); *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits.") (quotation marks omitted; alteration in original); *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("It is true that self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment.") (emphasis in original); *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("It is true that conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.") (internal quotation marks omitted).  Once the moving party has sufficiently supported its motion for summary judgment, the burden shifts to the non-movant to present enough

evidence such that a jury *could* return a verdict in her favor. *See, e.g.*, *Anderson*, 477 U.S. at 257.

The District Court here determined "[w]ith her own, self-serving declaration as her primary evidence, Lovett has failed to satisfy her burden[.]" (JA 467.) Ms. Lovett assigns reversible error to that conclusion, despite it being a simple application of the well-known legal precept cited above. Notably, Ms. Lovett does not refute the District Court's characterization of her affidavit as "self-serving" or being Ms. Lovett's "primary evidence." She simply contends that it was error for the District Court to conclude that her affidavit was not enough to withstand summary judgment. (Appellant Br., p. 17; "The court found that plaintiff could not prove pretext 'with her own, self-serving declaration as her primary evidence.' It is this failure to consider the plaintiff's evidence under the appropriate summary judgment light, which resulted in the court's erroneous dismissal of plaintiff's action.")

Ms. Lovett's argument is inconsistent with the "genuineness" requirement of Rule 56, the purpose of summary judgment, and the precedent from this Court and other courts around the country. *See, e.g.*, *Celotex Corp.*, 477 U.S. at 327; *National Enterprises, Inc.*, 201 F.3d at 335. Ms. Lovett had over a year to conduct discovery, and she received hundreds of pages of personnel documents and other evidence from Cracker Barrel pursuant to her document requests. If there was any

24

objective evidence supporting her claims, she had every opportunity to present that evidence to the District Court. She did not. Instead, the objective record evidence directly refuted her claims. Ms. Lovett's "primary evidence" is the same type of self-serving, uncorroborated declaration that has repeatedly been held insufficient to defeat summary judgment by this Court and many others.

### B. Because Ms. Lovett Failed to Proffer Any Evidence Which Would Show that Retaliation was the But-For Cause of Her Reduction in Hours and Being Removed from the Schedule, Her Retaliation Claim Fails as a Matter of Law.

In her Brief, Ms. Lovett declined to articulate the substantive legal standards applicable to her retaliation claim. Those standards are necessary to a complete understanding of the District Court's ruling and the issues on appeal.

Ms. Lovett claims unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981, which courts generally analyze under the same legal standard. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

Because Ms. Lovett presented no direct evidence of retaliation, she pursued her claim under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of retaliation by showing that: (1) she engaged in a protected activity; (2) the defendant took adverse employment

25

action against her; and (3) that a causal connection existed between the protected activity and the adverse action. *See, e.g., Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). If the plaintiff establishes a *prima facie* case, the employer may rebut her claim by articulating a legitimate, non-retaliatory reason for its actions. *Id.* The burden then shifts back to plaintiff to prove that the employer's proffered justification is false and merely a pretext for retaliation. *Id.*

Here, the District Court concluded that Ms. Lovett established a *prima facie* case of retaliation. Cracker Barrel does not assign error to that conclusion, because "[t]he burden of establishing a prima facie case . . . is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In turn, Cracker Barrel submitted substantial documentary evidence showing its non-retaliatory reason for removing Ms. Lovett from the schedule—Ms. Lovett's own refusal to work within Cracker Barrel's business needs. The burden is now on Ms. Lovett to show that reason to be a mere pretext for retaliation.

Recent developments in this Circuit make clear that but-for causation is, and has always been, required for a plaintiff to establish pretext under the *McDonnell Douglas* test. The recent seminal case on this issue is *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243 (4th Cir. 2015).

In *Foster,* this Court considered the proper legal standard for assessing a Title VII retaliation claim in light of the United States Supreme Court's holding in

26

*Univ. of Texas Southwestern Med. Cntr. v. Nassar*, __ U.S. __, 133 S.Ct. 2517 (2013). The *Nassar* Court held that plaintiffs attempting to prove retaliation must rely on the "traditional principles of but-for causation" instead of the lessened "mixed motive" causation standard available for plaintiffs asserting class-based discrimination claims under 42 U.S.C. § 2000e-2(m). *See Foster*, 787 F.3d at 249-50; *Nassar*, __ U.S. at __, 133 S.Ct. at 2533.

Importantly, the plaintiff in *Foster* did not rely on direct or indirect evidence of retaliation, as the plaintiff in *Nassar* did; she proceeded under the pretext framework in *McDonnell Douglas*, a standard "which *Nassar* [did] not purport to address." *Foster*, 787 F.3d at 250. Thus, the *Foster* Court was required to analyze what effect, if any, the *Nassar* decision held in the *McDonnell Douglas* context (the same legal framework under which Ms. Lovett pursues her claim against Cracker Barrel). *Id.*

The Court noted that there are really two stages of the *McDonnell Douglas* test requiring some form of causation: first, in making a *prima facie* case, and second, in proving pretext and satisfying the ultimate burden of persuasion. *Foster*, 787 F.3d at 251-52. According to this Court, *Nassar* did not alter either standard. *Id.* Because Cracker Barrel is willing to assume *arguendo* that Ms. Lovett established a *prima facie* case of retaliation, the *Foster* Court's analysis on that issue is not pertinent to this appeal. However, this Court's discussion of

27

causation at the pretext stage, quoted below, explains why the District Court's grant of summary judgment for Cracker Barrel on Ms. Lovett's retaliation claim is without error:

> A plaintiff who establishes a prima facie case of retaliation bears the "ultimate burden of persuading the court that [she] has been the victim of intentional [retaliation]." In order to carry this burden, a plaintiff must establish "*both* that the [employer's] reason was false *and* that [retaliation] was the real reason for the challenged conduct."
>
> *Nassar's* but-for causation standard . . . does not demand anything beyond what is already required by the *McDonnell Douglas* "real reason" standard. A plaintiff who can show that retaliation "was the real reason for the [adverse employment action]," will necessarily be able "to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct[.]" In other words, the statements "the real reason for [plaintiff's] termination was her employer's retaliation" and "[plaintiff] would not have been terminated but for her employer's retaliatory animus" are functionally equivalent.
>
> We conclude, therefore, that the *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action.

*Foster*, 787 F.3d at 252 (citations omitted) (emphasis added).

Ms. Lovett failed to present competent evidence tending to show that the "real reason" Cracker Barrel removed her from the schedule was a desire to retaliate against her. Because Ms. Lovett did not meet the required but-for causation standard at the pretext stage, summary judgment for Cracker Barrel should be affirmed.

28

Cracker Barrel's "real reason" for its actions was straightforward, fair, and transparent. On March 21, 2014, Ms. Lovett left a lengthy voice mail with Ms. Rice, in which Ms. Lovett explained that she would be reducing her availability to make money at another job. (JA 163; "Im gonna have to shorten them because its not really right for me to be available when my other job I can, you know, make money there.") True to her word, Ms. Lovett submitted an availability form on March 23, 2014 completely removing all weekend shifts from her schedule.[3] (JA 179.)

On March 27, 2014, Ms. Lovett and Ms. Moore had a conversation about Ms. Lovett's updated availability form.[4] (JA 162.) Ms. Moore "explained to [Ms. Lovett] that once she changed her availability and took Sunday off her schedule it was going to affect her hours." (JA 162.) Ms. Moore also told Ms. Lovett that Cracker Barrel would have to hire someone else to cover those weekend hours, and Ms. Lovett's weekday hours could be affected as a result. (JA 162.)

---

[3] Her previous availability form, submitted on September 30, 2013, showed availability from 2 pm to 10 pm on Sundays.

[4] In her Brief, Ms. Lovett seems to argue that the availability form she signed on March 23, 2014 had not been submitted by March 27, 2014, based on the statement: "Spoke with Johnni She states that Beatrice has not turned in a new avail form." (JA 162, Appellant Br. p. 20.) The "new avail form" referenced in that line could not have been the March 23 form. As Ms. Brown's diary entry goes on to state, by March 27, Ms. Lovett had already taken Sundays off of her schedule completely, reflecting that her March 23 availability form had been received.

29

On March 31, 2014, Ms. Brown wrote Ms. Lovett a letter in which she acknowledged Ms. Lovett's shortened availability to accommodate another job. (JA 181.)  In that letter, Ms. Brown stated: "Please understand that it is imperative to the successful operation of the store for you to be able to work the hours necessitated by Cracker Barrel's business needs."  (JA 181.)  That line echoes the directive from Cracker Barrel's Employee Handbook, which Ms. Lovett received prior to being hired, stating: "Scheduling is based on business need. Therefore, Cracker Barrel can not guarantee a certain number of hours for any employee." (JA 377.)

Ms. Moore followed up with Ms. Rice, Ms. Brown, and Ms. Johnston via email on March 31, 2014.  (JA 161.)  In that email, Ms. Moore said:

> Beatrice turned in a new availability sheet to Chris last week. She has listed her availability as Monday thru Thursday 6pm until 10pm. Friday she is available from 6pm until 11pm. As her last availability listed she still is not available on Saturday and now she has added that she is not available on Sunday. Prior to submitting this new availability she had requested three of the four Sundays off in the month of April. At that time I had a conversation with her and asked if she could work any of the Saturdays on the weekends she was requesting Sundays off. She said she would have to check her calendar but she didn't think so.  I explained if she was not available for Sundays and this was going to be an ongoing that [sic] I would have to hire another retail employee and it could effect [sic] the hours she got during the week. I do not have Beatrice scheduled for any hours next week due to her availability not meeting the needs of the business.

(JA 161.)

30

On April 9, 2014, Ms. Brown reached out to Ms. Rice, Ms. Moore, and Ms. Johnston and let them know that "a conversation needed to take place regarding [Ms. Lovett's] schedule or lack thereof." (JA 160.) Cracker Barrel had to hire a new retail employee to cover the gaps left by Ms. Lovett's recent availability change, and Ms. Brown wanted Ms. Lovett to know that. (JA 160.) However, Ms. Brown also made clear to Ms. Moore that "if [Ms. Lovett] opened her Sundays back up [Cracker Barrel was] to place her back on the schedule." (JA 160.)

On April 22, 2014, Ms. Moore met with Ms. Lovett in front of a third-party witness to explain Cracker Barrel's reason for removing Ms. Lovett from the schedule. (JA 160.) Ms. Brown's contemporaneous diary entry in the Employee Relations Department ticket tracker reads as follows:

> Johnni explained to Beatrice in front of Mary (AM) they explained to Beatrice the reason why she was not on the schedule. Johnni explained that without her opening up her availability on the weekend that her schedule could possibly stay this way. Due to her availability she would not be getting hours because her availability did not meet the needs of the business. Beatrice states that she could come up with a day here or there over the weekend. Johnni explained that she would need to open her availability to a set day and time on the weekend, not just one day here or there. Johnni didn't feel that it was fair for the others that worked there to take their hours through the week and give them to Beatrice because they would be working the busy times on the weekend. Beatrice was ok with the conversation and that was the end of it. Johnni dropped this message because she felt that Beatrice would call after she left the store.

(JA 160.)   This documentary evidence was also independently corroborated by witness affidavits before the District Court. (*See* JA 236-37; 280-82; 408.)

In order to survive Cracker Barrel's motion for summary judgment, it was Ms. Lovett's burden to show that this evidence was "false," and that but-for a desire to retaliate against her, Cracker Barrel would not have removed her from the schedule. *See, e.g.*, *Foster*, 787 F.3d at 252.   Ms. Lovett's "primary evidence" of pretext—her own self-serving affidavit, unsupported by the record—is woefully insufficient to satisfy that burden. *See, e.g., National Enterprises, Inc.*, 201 F.3d at 335.

Ms. Lovett also offers a patently unsupported argument in her Brief that Cracker Barrel wanted Ms. Lovett to submit a new availability form so it could then justify shortening her hours.   Yet she does not deny that she was the individual who filled out her availability forms, and it was her decision to remove all weekend shifts from her availability.   She also does not deny that Cracker Barrel repeatedly requested that Ms. Lovett open her weekend availability to work its busiest shifts, but she refused in order to work at another job.   Clearly, Cracker Barrel could not use the availability form to "justify" Ms. Lovett's removal from the schedule if she made herself available during the shifts Cracker Barrel repeatedly requested that she work.

32

Ms. Lovett also argues that her desire to work more hours evidences pretext. But Ms. Lovett's request to work more hours during *weekday shifts* is irrelevant in this context. Cracker Barrel did not need Ms. Lovett to work more hours during the slow weekday shifts. It needed her to work on the weekends. That Cracker Barrel declined Ms. Lovett's request to work more hours convenient only to her does not show retaliatory animus. Ms. Lovett's own attitude towards scheduling "cannot establish a genuine issue as to whether [she] was meeting [Cracker Barrel's] expectations." *King v. Rumself,* 328 F.3d 145, 149 (4th Cir. 2003). "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996).

It is also well-understood that this Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination[.]" *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quotation marks omitted). The only relevant concern is whether Cracker Barrel's well-documented, legitimate, non-retaliatory reason for removing Ms. Lovett from the schedule was pretextual. *See id.* When an employer articulates a legitimate, non-retaliatory reason for making an adverse employment action, it is not the Court's "province to decide whether the reason

33

was wise, fair, or even correct, ultimately, so long as it truly was the reason" for the action. *Id.* (quotation omitted).

Cracker Barrel is well within its legal right to remove an employee from its schedule if the employee is unavailable to work its busiest shifts. "Employees only available on weekdays" is not a protected class. Ms. Lovett has presented no competent evidence that Cracker Barrel did not actually emphasize weekend availability, make its schedule based on business needs, or treat similarly situated employees differently from the way it treated Ms. Lovett.

Rather, in an effort to show pretext, Ms. Lovett relies on crude comments allegedly made by Ms. Moore, as evidenced by nothing more than Ms. Lovett's self-serving affidavit. (Appellant Br. p. 21.) Ms. Moore vehemently denies making these statements. (JA 283). But even assuming that Ms. Moore did make such unacceptable comments, that evidence alone is still insufficient to establish pretext. In order to show that Cracker Barrel's stated reason for reducing Ms. Lovett's hours was merely a pretext for retaliation, she "must prove *both that the reason was false, and that [retaliation] was the real reason for the challenged conduct.*" *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis added); *Foster*, 787 F.3d at 252. Ms. Lovett's wild accusation, even if true, does not render Cracker Barrel's corroborated documentary evidence of its true motivation "false."

34

Finally, Ms. Lovett directs the Court's attention to a comment Ms. Moore made about Ms. Lovett's "poisonous attitude." The full statement reads: "Beatrice has made so many accusations about managers and her fellow employees that the management staff at this store feels that it is best not to let her spread this poisonous attitude to other areas of the store. Beatrice can not work in retail without causing mounds of paperwork to be created by multiple people addressing her concerns (that have found to be without merit)." (JA 443.) Even taking this comment in the light most favorable to Ms. Lovett, it is insufficient to show that Cracker Barrel's reason for removing Ms. Lovett from the schedule was "false." The context of Ms. Moore's statement shows that she was referring to cross-training, not scheduling. At a more fundamental level, Ms. Moore's comment is easily explained by her having to manage an employee that continued to falsely accuse her managers and coworkers of various misdeeds. Ms. Lovett does not refute the falsity of these claims. Making false accusations of theft and rudeness is not a protected employment activity. As such, Ms. Moore's desire to insulate this "poisonous attitude" is not competent evidence of unlawful retaliatory animus.

The undisputed facts are that Ms. Lovett restricted her availability in March 2014, and because her available hours did not fit within the needs of the business, Cracker Barrel removed Ms. Lovett from the schedule. Even though it had already hired a new retail employee to cover the gaps left by Ms. Lovett, Ms.

35

Brown made clear to Ms. Moore that "if [Ms. Lovett] opened her Sundays back up [Cracker Barrel was] to place her back on the schedule." (JA 160.) Cracker Barrel allowed Ms. Lovett to control her own fate. There is simply no competent evidence allowing Ms. Lovett to carry her ultimate burden of persuasion—that, but-for a desire to retaliate, Cracker Barrel would not have removed Ms. Lovett from the schedule.

## III. MS. LOVETT WAIVED ANY CHALLENGE TO THE DISTRICT COURT'S RULING ON HER DISCRIMINATION CLAIMS.

In addition to granting Cracker Barrel's motion for summary judgment on Ms. Lovett's retaliation claim, the District Court also dismissed Ms. Lovett's race-based discrimination claims premised on disparate discipline and an alleged failure to promote/train. (JA 460-64.) Ms. Lovett presented no argument on these rulings in her brief. Accordingly, any challenge to the District Court's grant of summary judgment on Ms. Lovett's discrimination claims is abandoned. *See* Fed. R. App. P. 28(a)(8); *Tucker v. Waddell*, 83 F.3d 688, 690 n.1 (4th Cir. 1996) (holding that the failure to raise an argument in appellate brief constitutes abandonment of argument on appeal) (citing *11126 Baltimore Blvd., Inc. v. Prince George's Cnty.*, 58 F.3d 988, 993 n.7 (4th Cir. 1995)).

36

## CONCLUSION

With her own self-serving affidavit as her "primary evidence," Ms. Lovett failed to create a genuine factual dispute.  Cracker Barrel's well-documented and clearly communicated reason for removing Ms. Lovett from the retail schedule was Ms. Lovett's own refusal to work within Cracker Barrel's business needs.  Ms. Lovett presented no competent evidence tending to show that reason to be "false," and as such, she cannot carry her ultimate burden of demonstrating that, but-for a desire to retaliate, Cracker Barrel would not have removed her from the schedule. Her claim of retaliation fails as a matter of law.  Ms. Lovett also waived any challenge to the dismissal of her race-based discrimination claims. Cracker Barrel respectfully requests that this Court affirm the District Court's grant of summary judgment.

Respectfully submitted,

YOUNG, MOORE, AND HENDERSON P.A.

BY:   /s/ Christopher A. Page_____
      Christopher A. Page
      NC State Bar No. 19600
      Post Office Box 31627
      Raleigh, North Carolina 27622
      919-782-6860
      chris.page@youngmoorelaw.com
      *Attorneys for Cracker Barrel Old Country Store, Inc.*

37

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: this brief contains <u>8,542 words</u>, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word in 14 point Times New Roman font.</u>

<u>/s/ Christopher A. Page</u>
Christopher A. Page
NC State Bar No. 19600
Post Office Box 31627
Raleigh, North Carolina 27622
919-782-6860
<u>chris.page@youngmoorelaw.com</u>
*Attorneys for Cracker Barrel Old Country Store, Inc.*

38

## **<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that on September 14, 2016, I have filed the foregoing Redacted Response Brief of Appellee with the Clerk of the Court via hand delivery and electronically using the CM/ECF system which will send notification of such filing to counsel below:

> Ralph Thomas Bryant, Jr.
> Attorney at Law
> P.O. Box 723
> Newport, NC 28570
> attorneyralphbryantjr@gmail.com

/s/ Christopher A. Page
Christopher A. Page
NC State Bar No. 19600
Post Office Box 31627
Raleigh, North Carolina 27622
919-782-6860
chris.page@youngmoorelaw.com
*Attorneys for Cracker Barrel Old Country Store, Inc.*
